UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20294-MIDDLEBROOKS/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TRAVIS DEAEMAS NELSON,

    Defendant.
_____/

# REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

Defendant, Travis Deaemas Nelson, filed a Motion to Suppress Physical Evidence and Statements, (ECF No. 17), which the Honorable Donald M. Middlebrooks to me for a report and recommendation. (ECF No. 20). The government filed a response (ECF No. 21), and Defendant filed a reply (ECF No. 23). After carefully considering the parties' memoranda and the applicable law, I recommend that the Court deny Defendant's Motion.

**I.  Background[1]**

On May 3, 2022, at approximately 6:45 p.m., City of Miami Police Department Officer Stephany Canizares, while on routine patrol, drove an unmarked police vehicle north on NW 17th Avenue, in Miami, Florida, within the jurisdiction of the City of Miami

---

[1] The facts herein are taken from the parties' memoranda and the deposition of Officer Stephany Canizares. *See* (ECF Nos. 17, 21, 23-1).

1

Police Department. As she approached the intersection at NW 71st Street, Officer Canizares saw a red Volkswagen Jetta drive west on that street and then turn right onto NW 17th Avenue.

Northwest 71st Street is a jurisdictional boundary between the City of Miami and Miami-Dade County Police Departments: the westbound lane is within Miami-Dade County and the eastbound lane is within the City of Miami. Thus, the Jetta was in Miami-Dade County jurisdiction.

As she drove north, Officer Canizares crossed NW 71st Street and drove behind the red Jetta. The officer knew that the Jetta matched the description of a vehicle, bearing a stolen license plate, that had been photographed days earlier by a License Plate Reader ("LPR").[2] Officer Canizares followed the Jetta for five minutes and performed a records' check to confirm that the license plate was stolen. The Officer then called other City of Miami police officers to assist her with a traffic stop of the vehicle. City of Miami officers responded in unmarked vehicles and together they stopped the Jetta for driving with a stolen license plate, which is misdemeanor offense in violation of Florida Statute section 320.261. The stop occurred within the jurisdiction of Miami-Dade County, about 1.1 miles away from the City of Miami.

---

[2] In its memorandum, the government states that a LPR photographed the vehicle within the City of Miami on May 3, 2022, around 1:25 p.m., and that Officer Canizares was aware of this. (ECF No. 21 at 2). At her deposition, Officer Canizares testified that the LPR sent the signal in the "days prior" to May 3rd. (Canizares Dep. 16:5-11, ECF No. 23-1).

2

The officers ordered Defendant, the driver of the vehicle, out of the car. During the stop, an officer saw a firearm magazine on the floorboard of the passenger seat. Officers conducted a pat down of Defendant and found narcotics and a 9mm round of ammunition on his person. The officers ran a background check and learned Defendant is a convicted felon. They searched the vehicle and found, in addition to the firearm magazine, a 9mm Glock firearm, an AR-15 firearm, several rounds of ammunition, narcotics and police paraphernalia. After his arrest, Defendant waived his *Miranda*[3] rights and stated, among other things, that he owned all contraband in the vehicle.

On June 29, 2022, a grand jury in the Southern District of Florida charged Defendant by Indictment with two counts of possession of a firearm and/or ammunition by a convicted felon. (ECF No. 1).

In his Motion, Defendant argues that the City of Miami police officers had no authority under Florida law to stop Defendant's vehicle outside their jurisdiction, and therefore the stop was unreasonable and violated the Fourth Amendment to the United States Constitution. (ECF No. 17 at 3-5). Defendant further argues that under the fruit of the poisonous tree doctrine, *Wong Sun v. United States*, 371 U.S. 471 (1963), the Court must suppress all evidence obtained as a result of the Fourth Amendment violation, to include the firearms and ammunition found during the search of Defendant's person and vehicle, and Defendant's incriminating statements. (ECF No. 17 at 5-6).

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The government responds with three arguments. The first two address whether the officers violated Florida law: the government asserts that the officers had authority to conduct the out-of-jurisdiction stop because (1) they were in "fresh pursuit" of the vehicle and (2) they acted in accordance with a Mutual Aid Agreement between the law enforcement agencies of Miami-Dade County and the City of Miami. (ECF No. 21 at 5-8). Third, the government argues that even if the arresting officers violated state law, their conduct did not violate the Fourth Amendment, and therefore, suppression is improper. (*Id.* at 8-10).

Binding Supreme Court authority leads me to conclude that the officers had probable cause to believe Defendant committed the offense of driving a vehicle with a stolen license plate in their presence, and therefore the stop and search of Defendant and his car was not unreasonable under the Fourth Amendment. This is true even if the officers violated state law in the process.[4]

## II. Analysis

### a. Florida law

"Generally, an officer does not have any official power to make an arrest outside the officer's jurisdiction." *State v. Gelin*, 844 So. 2d 659, 661 (Fla. 3d DCA 2003) (citations omitted). There are four exceptions to this general principle. *See Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1303-05 (S.D. Fla. 2020). I consider the two exceptions the government invokes.

---

[4] In their memoranda the parties focus their argument on this question of state law. Given that, I address that question, even though it is not necessary to the Fourth Amendment analysis.

1) **Fresh pursuit**

Under the "fresh pursuit" exception, an officer may "pursue a fleeing suspect, even though the suspect crosses jurisdictional lines, provided that the officer had legally sufficient grounds to detain or arrest the suspect before he or she left the jurisdiction." *Jones v. State*, 279 So. 3d 342, 345 (Fla. 5th DCA 2019) (citations omitted).

Section 901.25, Florida Statutes, codifies "fresh pursuit." It states that officers may pursue a person outside their jurisdiction when the person has (1) "committed a felony or ... is reasonably suspected of having committed a felony"; (2) "committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed"; or (3) has "violated a county or municipal ordinance or chapter 316 or has committed a misdemeanor." Fla. Stat. § 901.25(1).

The government argues that this exception applies because the City of Miami police officers pursued Defendant "for his violation of traffic laws that occurred in their jurisdiction." (ECF No. 21 at 5). The government states that a LPR photographed the red Jetta traveling within the City of Miami earlier that day, around 1:25 p.m., with a stolen license plate. (*Id.* at 2). Thus, as the government argues, when the officers saw the car later that day in Miami-Dade County, around 6:45 p.m., they were in "fresh pursuit" of it for the misdemeanor offense that occurred about five hours earlier in the City of Miami.

Defendant correctly notes that at her deposition, Officer Canizares did not testify that she knew that the vehicle had been photographed within the City of Miami around 1:25 p.m. that day. Rather, she testified that the LPR sent the signal in the "days prior." (Canizares Dep. 16:5-11, ECF No. 23-1).

5

Under either scenario, the Officer's actions did not amount to fresh pursuit.

The "fresh pursuit" exception has three requirements: "1) that the police act without unnecessary delay; 2) that the pursuit be continuous and uninterrupted; and 3) that there be a close temporal relationship between the commission of the offense and the commencement of the pursuit and apprehension of the suspect." *Gelin*, 844 So. 2d at 661 (quoting *Porter v. State*, 765 So. 2d 76, 80 (Fla. 4th DCA 2000)).

The government, in its response memorandum, does not explain how these three requirements are satisfied. It cites several cases for support, but the facts of those cases are materially different than those here.[5] A main difference is the temporal relationship between the commission of the offense and the commencement of the pursuit.

In *Gelin*, for example, a Miami Beach detective received a BOLO about a vehicle involved in a robbery that had just been committed within Miami Beach city limits. 844 So. 2d at 660. When he received the BOLO, the Detective was driving home on the MacArthur Causeway, from an off-duty detail, and was one mile outside the Miami Beach city limits. *Id.* In response to the BOLO, he pulled over because he believed, in light of the location of the robbery, that the suspects would take that route to leave Miami Beach. *Id.* at 661. Within minutes, he saw a vehicle that matched the description of the BOLO and immediately pursued it. *Id.* He continued to follow the vehicle until it came to a stop and the suspects were apprehended. *Id.*

---

[5] The government cites: *Jones v. State*, 279 So. 3d 342 (Fla. 5th DCA 2019); *State v. Scott*, 244 P.3d 622 (Idaho Ct. App. 2010); *State v. Phoenix*, 428 So. 2d 262 (Fla. 4th DCA 1982); *State v. Gelin*, 844 So. 2d 659 (Fla. 3d DCA 2003); and *Doolittle v. State*, 154 P.3d 350 (Wyo. 2007).

The issue before the *Gelin* Court was "whether, in light of his location at the time of the BOLO, [the detective] was in fresh pursuit of the defendants within the meaning of Section 901.25, Florida Statutes." *Id.* at 661. The Court found that the officer was in fresh pursuit:

> [The detective] spotted the defendants within minutes of hearing the BOLO about a crime that occurred within his jurisdiction, and immediately contacted dispatch to advise that he was in pursuit. [He] maintained close pursuit of the defendants until they came to a dead end, which forced them to stop.

*Id.* at 661-62.

In contrast, Officer Canizares spotted the red Jetta in Miami-Dade County either five hours or some days after she learned that, within the City of Miami, the driver of the Jetta had operated the vehicle with a stolen tag. There clearly was no "close temporal relationship between the commission of the offense [that occurred in the City of Miami] and the commencement of the pursuit and apprehension of the suspect." *Gelin*, 844 So. 2d at 661. I find that Officer Canizares was not in fresh pursuit when she stopped the Jetta.

### 2) The Mutual Aid Agreement

The government next argues that the police officers had legal authority to conduct the stop under a Mutual Aid Agreement. Another exception to the general rule that officers may not act outside their jurisdiction is "when two enforcement agencies enter[] into a mutual aid agreement that permits the extraterritorial conduct by the outside police municipality." *Daniel v. State*, 20 So. 3d 1008, 1011 (Fla. 4th DCA 2009) (citation omitted); *see also* Fla. Stat. § 23.127(1) ("Any employee of any Florida law enforcement

agency who renders aid outside the employee's jurisdiction but inside this state pursuant to the written agreement entered under this part has the same powers, duties, rights, privileges, and immunities as if the employee was performing duties inside the employee's jurisdiction.").

The government relies on this portion of the Mutual Aid Agreement between the City of Miami and Miami-Dade County law enforcement agencies:

> Concurrent law enforcement jurisdiction in and throughout the territorial limits of the participating municipalities located in Miami-Dade County and in unincorporated Miami-Dade County, for arrests made pursuant to the laws of arrest of persons identified as a result of *investigations of any offense constituting a felony* … when such offense occurred in the jurisdiction of the agency employing the arresting officer.

(ECF No. 21-1 at Section VI.B) (emphasis added).

The government suggests that the City of Miami police officers, in their pursuit of Defendant, were investigating the felony offense of possession of a stolen vehicle. (ECF No. 21 at 8). For support, it states: "[T]he offense of possession of the stolen license plate occurred in the City of Miami, as recorded by LPRs, and law enforcement knows that stolen license plates are often used to conceal the identity of a vehicle, such as when a vehicle is stolen, which is a felony offense." (*Id.*).

The government, however, makes no showing to support that the officers were, in fact, investigating the commission of a felony offense as opposed to a misdemeanor. In fact, Officer Canizares' deposition testimony outright refutes the government's argument. At deposition she clearly stated that the stop did not involve a felony investigation. *See* (Canizares Dep. 13:11-15, 20:18-24, ECF No. 23-1).

In sum, the government has not shown the applicability of the foregoing exceptions to the general principle that officers may not enforce traffic laws outside their jurisdiction. I find that the officers violated Florida law when they conducted the traffic stop of Defendant's vehicle. This, however, did not cause the Officers' search and seizure of Defendant to violate the Fourth Amendment.

### b. The Fourth Amendment

The Fourth Amendment to the United States Constitution protects "against unreasonable searches and seizures" of persons. U.S. Const. amend. IV. A traffic stop is a "seizure" of a person within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (citations omitted). "An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances." *Id.* (quotation marks omitted). In *Whren*, the Court wrote that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* (citations omitted).

Later, in *Virginia v. Moore*, the Supreme Court got more specific. It held:

> When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety.

553 U.S. at 178. This holding compels this Court to deny Defendant's Motion.

The question before the Court in *Moore* was whether officers violated the Fourth Amendment when they arrested the defendant, in violation of state law, for the misdemeanor violation of driving with a suspended license. There, Virginia law provided

9

that officers had only the authority to issue a summons for that offense, not to place a suspect under arrest. *Id.* at 167. The record was clear that the officers witnessed the defendant driving and confirmed that his license was suspended, and thus had probable cause that the defendant was committing that misdemeanor offense in their presence. *Id.* at 166-67.

The Court noted that the touchstone of the Fourth Amendment is reasonableness. *Id*. at 168 ("The Fourth Amendment protects 'against unreasonable searches and seizures' of (among other things) the person."). It next noted that Courts apply a balancing test to determine if a particular search or seizure was reasonable:

> [W]e have analyzed a search or seizure in light of traditional standards of reasonableness "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

*Id.* at 171 (citation omitted). The Court then resolved that balancing test with this per se rule:

> In a long line of cases, we have said that *when an officer has probable cause to believe a person committed even a minor crime in his presence*, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable.

*Id*. (emphasis added) (citations omitted). The Court was clear: the officers' arrest of that defendant in violation of state law was irrelevant to the Fourth Amendment analysis. *Id.* at 171-176. The Court then repeated its holding:

> We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such

10

>arrests however they desire, state restrictions do not alter the
>Fourth Amendment's protections.

*Id*. at 176.

Here, the record is clear[6] that Officer Canizares and her fellow officers had probable cause to believe that Defendant committed the crime of driving with a stolen tag in their presence when they stopped and arrested Defendant. Under *Moore*, this is per se reasonable under the Fourth Amendment.

In a published opinion, the Eleventh Circuit applied the holding in *Moore* in an analogous circumstance. The Court in *United States v. Goings*, upheld a trial court's denial of a motion to suppress, without an evidentiary hearing, where the defendant claimed that Georgia law enforcement officers arrested him in Florida without lawful authority, and therefore his arrest was in violation of the Fourth Amendment. 573 F.3d 1141 (11th Cir. 2009). In *Goings*, there was no question that the law enforcement officers had probable cause that the defendant committed a crime in their presence. *Id.* The Court of Appeals affirmed the trial court's ruling that the law enforcement officers' seizure and search of the defendant was proper under the Fourth Amendment. *Id*. at 1142-1143.

Trial courts in this Circuit have since applied *Moore* and *Goings*, as they must. *See, e.g.*, *Millender v. United States*, No. 16cv45, 2018 WL 1555653, at *12 n.15 (M.D. Ala. Mar. 9, 2018) ("An arresting officer's territorial jurisdiction under state law is irrelevant to

---

[6] In his Motion, Defendant noted that "City of Miami Officers observed the traffic misdemeanor outside of City of Miami jurisdiction" (ECF No. 17 at 5), and in his reply memorandum, Defendant wrote that "Officer Canizares did not have probable cause to believe that a crime was committed in her presence *until* five minutes after she began following Mr. Nelson out of her own jurisdiction." (ECF No. 23 at 3) (emphasis added).

a Fourth Amendment inquiry where the arrest was supported by probable cause.") (citations omitted); *Brown v. United States*, No. 19-cv-08034, 2022 WL 493281, at *2 (N.D. Ala. Feb. 17, 2022) ("[T]he officer had probable cause to arrest Brown, and that the officer left his jurisdiction to make this arrest does not render it violative of the Fourth Amendment."); *United States v. Lawrence*, No. 17-cr-126, 2018 WL 2275557, at *6 (N.D. Ga. Apr. 27, 2018) ("[E]ven if Defendant's arrest were somehow improper, Defendant's Fourth Amendment challenge fails because the officers testified credibly that they witnessed Defendant driving without his lights, and therefore had probable cause to believe that Defendant had committed an offense.").

The legal authority Defendant cites in support of his argument was decided before *Moore. See* (ECF No. 23 at 2).

In sum, I conclude that law enforcement's May 3, 2022, seizure and search of Defendant and his vehicle did not violate Defendant's Fourth Amendment rights.

### III. Recommendation and Objections

For the foregoing reasons, I RESPECTFULLY RECOMMEND that the Court **DENY** Defendant's Motion to Suppress. (ECF No. 17).

**No later than October 25, 2022,** the parties may file any written objections to this Report and Recommendation with the Honorable Donald M. Middlebrooks, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b), 11th Cir. R. 3-1 (2016). **The parties shall not**

**file a memorandum in response to an objection absent prior court authorization**.

DONE AND RECOMMENDED in Miami, Florida this 20th day of October 2022.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Donald M. Middlebrooks
All counsel of record